UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JACKIE E.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:21cv845 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2

2. The claimant has not engaged in substantial gainful activity since October 31, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following medically determinable impairments: history of left breast cancer stage II ER/PR negative/HER-2 positive in 2002 followed by Cytoxan, Taxotere and DCIS. She had Stage 0 right DCIS breast cancer in March 2018 requiring biopsy, pathology and mastectomy by May 2018. She had seromucinous borderline tumor in October 2018 followed by six months of treatment with six months of side effects only. She had acute medical anxiety, acute colitis, high cholesterol, acute high blood pressure, diabetes mellitus II, mild hyperinflation of the lungs in January 2021, hepatic steatosis and hepatomegaly, severe episode of recurrent major depressive disorder, reported arthritis, non-intractable and unspecified migraines, hyperlipidemia, benign hypertension, history of infected abdominal wall mesh, "minimal" and "mild" degenerative changes of the right shoulder (20 CFR 404.1521 *et seq*.).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.).

5. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2019, through the date of this decision (20 CFR 404.1520(c)).

(Tr. 14-21).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 21, 2022.  On April 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 29, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

3

91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 2 was the determinative inquiry.

Plaintiff was born on February 23, 1961. (Tr. 33). She was fifty-eight years old on her alleged onset date and considered a person of advanced age. (Tr. 65, 202). 20 C.F.R. § 404.1563(e). On February 23, 2021, Plaintiff turned sixty years old and became a person closely approaching retirement age. *Id*.

Plaintiff had at least a high school education. (Tr. 726). She worked continuously since entering the job market at sixteen years old, until the onset of her disability on October 31, 2019. (Tr. 189-191, 202). Mostly recently, Plaintiff worked as a school janitor for 27 years. (Tr. 292). Plaintiff alleged disability due to metastatic ovarian cancer, history of breast cancer, diabetes, diverticulitis, high blood pressure, high cholesterol, cognitive issues, pain/numbness, nausea/ vomiting, and mood swings. (Tr. 201).

In support of remand, Plaintiff first argues that the ALJ erred in his finding that Plaintiff

4

had no severe impairments. It is the Commissioner's own policy that severity at step two of the sequential evaluation process is only a *de minimis* screening standard which is satisfied if the claimant shows that the impairment has more than a slight or minimal effect. *See* Social Security Ruling (SSR) 85-28, 1985 WL 56856 (stating that a claimant need only demonstrate something beyond a slight abnormality or combination of abnormalities that have more than a minimal effect on the ability to work). The Supreme Court has stated that a step two severity determination is a "*de minimis*" inquiry. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). When any doubt exists, a step two determination must be resolved in favor of the claimant. *Id*.; *see also Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (stating that it is "the common-sense position that because step two is to be rarely utilized as basis for the denial of benefits . . . [g]reat care should be exercised in applying the not severe impairment concept . . . [because] its invocation is certain to raise a judicial eyebrow") (citations omitted).

The Court of Appeals for the Seventh Circuit has confirmed that severity is a *de minimis* standard. *Madrid v. Astrue*, 2011 WL 528810, at *2-4 (7th Cir. 2011) (remanding where ALJ found claimant's knee impairment non-severe at step two, despite evidence that it had more than a minimal effect on his ability to perform basic work activity); *see also O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697-98 (7th Cir. 2016) (remanding where ALJ relied on non-examining State Agency opinions to find depression was not severe). Here, however, the ALJ found that Plaintiff's multiple post-treatment impairments arising from multiple cancer diagnoses and surgeries did not meet even the *de minimis* standard for severity.

Plaintiff argues that the ALJ's failure to consider her residual symptoms from treatments

for multiple cancers in combination was in error. An ALJ must consider all of the claimant's impairments in combination: "In determining whether your physical or mental impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R §§ 404.1523(c), 404.1545(a)(2); *Johnson v. Sullivan*, 922 F.2d 346, 350 (7th Cir. 1990) (concluding legislatures "by explicitly discussing multiple 'impairments' and 'abnormalities,' recognized that a combination of maladies may constitute a disability).

Plaintiff contends that the ALJ's decision unreasonably assumed that symptoms of cancer are limited to the period of active treatment. Plaintiff points out that cancer is an ongoing illness that requires monitoring and maintenance, and often entails medical interventions that can cause physical and mental limitations lasting far beyond the period of active treatment. In Plaintiff's case, she had been diagnosed with cancer on three separate occasions over the past 20 years. First, she was diagnosed with stage 2 breast cancer in 2002 and underwent a left radical mastectomy followed by chemotherapy and medication maintenance. (Tr. 626). She was again diagnosed with breast cancer in March 2018 and had a right mastectomy that May. (Tr. 561, 572-573). Then, just 5 months later, she was treated in the emergency room for abdominal pain which was eventually diagnosed as bilateral seromucinous ovarian cancer. (Tr. 627). She underwent a multifaceted surgical procedure in December 2018, which included a bilateral salpingo-oophorectomy to remove the ovarian masses. (Tr. 635-637).

Plaintiff notes that, based on her history of multiple cancer diagnoses, she was considered

6

a high-risk patient even after her surgery for ovarian cancer. (Tr. 628). She was also considered immunocompromised due to her history of chemotherapy for breast cancer. (Tr. 891). Her doctor required her to have an additional inoculation for the measles when there was an outbreak in the country. *Id*. Meanwhile, she had blood work every three months following her ovarian cancer treatment to ensure her cancer had not returned. (Tr. 678). While genetic testing was normal, in the absence of hereditary mutations, cancer risks are indicated by family history. (Tr. 845). In Plaintiff's case, her mother died of lung cancer at age 54, her father died of leukemia at age 45, and her grandmother died from pancreatic cancer at age 65. (Tr. 808). Thus, Plaintiff continued to take Letrozole, a hormone-based chemotherapy, to keep her cancer in remission. (Tr. 806, 825). However, Letrozole was also causing her to experience many side effects, including nausea, diarrhea, and indigestion. (Tr. 678, 872-875). Despite being free of cancer, Plaintiff's treatments and symptoms were ongoing.

Plaintiff also contends that the mental impact of her cancer history and her status as a high-risk patient was problematic. (Tr. 628). In September 2019, just one month before her alleged onset date, Plaintiff began to complain of some difficulties functioning. (Tr. 880). Symptoms included insomnia, concentration difficulties, diminished interest, excessive worry, fatigue, and feelings of guilt. (Tr. 880). By January 2020, she reported that functioning had become extremely difficult in connection with her chronic illnesses and financial worries. (Tr. 872). She exhibited anxiety, forgetfulness, hopelessness, memory loss, mood swings, poor attention span, and poor concentration. (Tr. 874). These findings were consistent with those of the Agency's consultative examiner, who found Plaintiff to have poor concentration, poor memory, and poor social interactions. (Tr. 658). *See* 20 C.F.R. § 404.1520c(c)(2)(stating that the

7

more consistent a medical opinion is with evidence from other medical or non-medical sources, the "more persuasive the medial opinion(s)" will be). Depression screenings (PHQ) also showed severe depression. (Tr. 873, 881). However, the ALJ opined that Plaintiff's mental impairments would only slightly impact her functioning.

      Plaintiff argues that the ALJ's finding that Plaintiff's physicians indicated that she had no limitations in her ability to perform work activity was based on a misreading of the evidence. Specifically, the ALJ relied on a medical note supposedly from March 2021 as indicating that Plaintiff's performance status (ECOG rating) was "0" indicating she was capable of being fully active and "able to carry on all pre-disease activities without restriction". (Tr. 18, 20, 21). Plaintiff contends that the note the ALJ was relying upon was not from March 2021, but actually an (incomplete) medical note from January 17, 2019. (Tr. 842). Plaintiff points out that the bottom of the page shows that the record was "electronically signed" by the provider on "1/17/2019." *Id*. Additionally, this partial medical note is a duplicate of medical records obtained from the provider via HIT MER at Exhibit 5F from Goshen Hospital. (Tr. 627). The full medical note from Exhibit 5F shows that this medical limitation was from January 2019 - a full 9 months before Plaintiff even alleged her impairments became disabling. (Tr. 625-628).

      The ALJ heavily relied on this mischaracterization of the evidence, as he believed it was dated just before the hearing and he cited to the ECOG rating three separate times in his decision while explaining why he believed Plaintiff had no impairments that affected her ability to work. (Tr 18, 20, 21).

      Plaintiff also argues that the ALJ's reliance on Plaintiff's pre-onset work activity in his finding that Plaintiff failed to prove she suffered from any severe impairments was also based on

legal error. *See* 20 C.F.R. § 404.1520(a)(4). The step two severity determination is reached only if a claimant has not performed substantial gainful work activity; thus a claimant's work activity is irrelevant to determining the severity of her medical impairments. 20 C.F.R. §§ 404.1520(a)(4)(i-ii). In fact, the Agency's own regulations state that, "[i]n determining whether you have a disabling impairment, earnings are not considered." 20 C.F.R. § 404.1511(a). They further clarify that an adjudicator "will not consider your age, education, and work experience" when establishing severity at step two of the sequential evaluation process. 20 C.F.R. § 404.1520(c). After step one of the sequential evaluation process, the ALJ's next opportunity to discuss and rely on work activity only arises at step four. 20 C.F.R. § 404.1520(a)(4)(iv). Having not identified a severe impairment, the ALJ never reached step four and could not rely on past work to make his determinations. Thus, Plaintiff's ability to perform work activity before her disability onset date proved nothing in terms of her functional abilities under the Agency's own rules. (Tr. 20-21, 202).

Due to the ALJ's legal errors in the Step Two determination, as discussed above, remand is warranted.

Next, Plaintiff argues that the ALJ failed to develop the record concerning her documented reasons for limited treatment. The Agency has stated that they will not find an individual's symptoms inconsistent with the evidence based on the absence of treatment "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029, at *8-9. While treatment frequency is relevant to an ALJ's assessment of the case, an adjudicator must consider why an individual has not sought treatment and "explain how [he] considered the

9

individual's reasons." *Id*. Here, the ALJ purportedly gave "special attention" to the duration of Plaintiff's medical conditions and the frequency with which she sought treatment, but concluded that the evidence did not establish that any impairments "limited the claimant's ability to perform work activities over 12 continuous months". (Tr. 16). The ALJ also failed to consider the established reasons why Plaintiff had not pursued more frequent treatment for her impairments.

The Agency admits that they have relied on a dearth of evidence in deciding this claim in spite of Plaintiff's documented and unfortunate circumstance of being unable to afford health insurance. This is a violation of long-standing Agency policy, which precludes an ALJ from relying on a lack of evidence to find that an individual was not as limited as they alleged when there was good cause for their lack of treatment. The inability to afford medical insurance would certainly impact an individual's ability to pursue medical treatment, even if they experienced disabling symptoms.

The Agency's reference to Plaintiff's sparse medical treatment when she was without insurance is meaningless. It is not unreasonable that Plaintiff would find a way to see a physician at some point; but her ability to attend one medical appointment does not mean she was able to pursue a host of medical services. This one visit was evidence of Plaintiff doing the most she could to help herself with the limited resource available to her. The ALJ had an opportunity to develop the evidence - something that Plaintiff was not able to do for herself - but he chose not to.

Under SSR 16-3p, the Agency recognizes a variety of situations where a claimant's failure to follow or pursue treatment may be acceptable. Had the ALJ properly applied SSR 16-3p, the ALJ would have recognized that Plaintiff's treatment frequency might not be

consistent with the degree of limitations she experienced due to one of the following:

- An individual may not be able to afford treatment and may not have access to free or low-cost medical services.
- Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.

*See* SSR 16-3p, 2016 WL 1119029, at *9.

As is true of most disability claimants, Plaintiff had been out of work since the alleged onset date of October 31, 2019. (Tr. 14, 202, 282). She testified that she was kept under her former employer's medical coverage for only 6 months after leaving work, through April 2020. (Tr. 34). Since that time she was unable to afford private insurance and she was not covered by that of her spouse. *Id*. Accordingly, Plaintiff's medical treatments were significantly truncated since April 2020. Consistent with her testimony, it appears that Plaintiff was only able to attend two medical appointments since losing her insurance: once in June 2020 for cancer surveillance (Tr. 806-809) and once in January 2021 for objective testing to ensure her cancer had not returned. (Tr. 774-777). Plaintiff was only able attend appointments related to her potentially terminal, recurrent illness.

The ALJ was well-aware that Plaintiff had financial limitations that prevented her from seeing doctors regularly. (Tr. 15). He was also aware that she felt she should see a doctor more often (Tr. 15), but the ALJ failed to take the steps required to make the record complete. The ALJ had a duty to "fully and fairly develop the facts" relative to Plaintiff's claim for benefits. *See Sims v. Apfel*, 530 U.S. 103, 111 (2000) (requiring ALJs to "investigate the facts and develop the arguments both for and against granting benefits"); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014)(concluding that ALJ's have a duty to develop a full and

11

fair record, especially when a "gap in the medical evidence is significant and prejudicial").

Because Plaintiff had been without medical insurance, there was no way for the ALJ to conclusively know that Plaintiff did not have any impairment that lasted 12 months or more because there was no medical evidence available after June 2020 other than reports from radiologic testing. Plaintiff's uninsured status created a gap in the medical evidence that made it nearly impossible to know whether her impairments were still disabling 12 months or more after her alleged onset date. Thus, the ALJ's conclusions were based on an under-developed record.

The ALJ should have sought additional medical evidence in this case due to Plaintiff's inability to obtain medical treatment on her own. The ALJ could have sent Plaintiff for a consultative examination. *See* 20 C.F.R. §§ 404.1512(b)(2); 404.1517 (empowering the ALJ to order appropriate consultative examinations and tests to more fully develop the record evidence). Such an exam could have definitively determined what residual limitations Plaintiff was experiencing at a point at least 12 months after her alleged onset date. But the ALJ chose not obtain such information and instead rely on a lack of information. The ALJ could have sent interrogatories to or requested testimony from a medical expert. *See* SSR 17-2p, 2017 WL 3928306, at * 3; *see also* Hearing, Appeals and Litigation Law Manual (HALLEX) I-2-5-32 (authorizing medical expert testimony); HALLEX I-2-5-30 (C) (authorizing medical expert interrogatories). A medical expert could, at the very least, have provided information about Plaintiff's expected abilities and limitations after multiple surgeries for recurrent cancer. In failing to comply with the regulations or develop the record, the ALJ's decision was based on legal error and remand is required.

Plaintiff has also raised the constitutional issue of whether the ALJ was properly

appointed. However, as Plaintiff has acknowledged in her reply brief, under the doctrine of constitutional avoidance, this Court must not reach this constitutional issue unless it is forced to do in order to resolve this case. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936). As remand is appropriate in this case due to errors by the ALJ, this Court will invoke the doctrine of constitutional avoidance, and decline to address the constitutional issue. *United States v. Orona-Ibarra*, 831 F.3d 867, 876 (7th Cir. 2016); *Taffy v. Comm'r of Soc. Sec.*, No. C-21-5146, 2021 WL 4988717, at *6 (W.D. Wash. Oct. 27, 2021).

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 6, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court